(76 South. 451)

HEATH et al. v. LEWIS et al. (3 Div. 299.)

(Supreme Court of Alabama. June 28, 1917.)

1. APPEAL AND ERROR ⬷⬵655(2) — BILL OF EXCEPTIONS—ALTERATION—STRIKING.

Where bill of exceptions was presented to the presiding judge January 22, 1917, and he approved and signed it April 16th, and it was filed in the office of the circuit court May 12th, and some time subsequent, more than six months after trial, the bill of exceptions was altered by adding the direction, "Clerk will leave in motion for new trial," the alteration was unauthorized, whether done by the presiding judge or some one else; but the action did not justify striking of the entire bill, it not appearing to have been made by direction of appellants, or that they had any notice or knowledge, as the alteration was void, and to be disregarded.

On the Merits.

2. ADVERSE POSSESSION ⬷⬵100(5)—COLOR OF TITLE—INVALID DEED.

An unrecorded deed, invalid to convey legal title, because attested by only one witness, who signed by mark, may be used as color of title of the whole tract, in connection with evidence of adverse possession; a large portion of the land being woodland, and only part being in actual cultivation.

3. ADVERSE POSSESSION ⬷⬵13—CLAIMING UNDER DEED.

Where a mother conveyed land to her daughter by a genuine deed, whether sufficiently attested or not, and the daughter remained in possession, claiming under the deed adversely to the world, using the land for all purposes for which it was adapted, selling the timber, and

mortgaging the land as her own, also paying taxes from execution of the deed in 1874 to her death in 1915, without recognition of any right in her brother, the daughter acquired title to the land under the doctrine of prescription and repose.

4. WITNESSES ☜159(8) — TESTIMONY AS TO AGREEMENT WITH DECEDENT—STATUTE.

Under Code 1907, § 4007, relative to the competency as witnesses of parties affected by interest, in ejectment by a brother against defendants claiming title from his sister, who held under their mother, the brother was incompetent to testify to an agreement had with his sister, deceased at time of suit, whose estate was interested in the result of the suit, that she would hold the land for both of them.

McClellan, J., dissenting.

Appeal from Circuit Court, Autauga County; Leon McCord, Judge.

Suit by William Lewis, who died during suit, the cause being revived in the name of his next of kin and heirs at law, against T. H. Heath and Maggie Nell Myrick. From a judgment for plaintiffs, defendants appeal. On motion to strike bill of exceptions, and on the merits. Judgment reversed, and cause remanded.

C. E. O. Timmerman and Eugene Ballard, both of Prattville, for appellants. Gipson & Booth, of Prattville, for appellees.

GARDNER, J. This cause was submitted upon motion to strike the bill of exceptions, and also upon the merits. The bill of exceptions was presented to the presiding judge on January 22, 1917. On April 16, 1917, he approved the same, signed it, and it was filed in the office of the circuit clerk on May 12, 1917. Some time subsequent to May 12, 1917, and more than six months after the trial of the cause, the bill of exceptions was altered by adding thereto the following direction: "Clerk will leave in motion for a new trial." When the bill of exceptions was filed with the clerk, the motion for a new trial was stricken out of the same, by being crossed with pencil, and the word "out" inserted in the margin against the cross mark. It is insisted that this was an unauthorized alteration of the bill of exceptions after the same had been signed and settled, and more than six months after the trial of the cause, and that, therefore, the same could not be changed, and that such alteration justifies the bill of exceptions being stricken.

[1] We agree that the alteration was unauthorized, whether done by the presiding judge or some one else; but we are of the opinion that such action does not justify the striking of the entire bill of exceptions. The alteration does not appear to have been made by direction of the appellants, or that the appellants had any notice or knowledge thereof. It did not call for a change of any of the testimony in the bill of exceptions, or any of the pleadings in the cause, or anything of that character, but merely called for the insertion of the motion for a new trial, which was on file. There is no difficulty, therefore, in discerning the unauthorized alteration, and we are persuaded that the alteration is void, and therefore should be disregarded, leaving no motion for a new trial in the bill of exceptions, but that the bill of exceptions as a whole should not be stricken, but be considered correct as the same appeared on the date of May 12, 1917. Briggs v. T. C., I. & R. R. Co., 175 Ala. 130, 57 South. 882. The facts presented in L. & N. R. R. Co. v. Malone, 116 Ala. 600, 22 South. 897, in regard to the bill of exceptions there involved, readily distinguish that case from the situation in the instant case.

The motion to strike the bill of exceptions will therefore be denied.

### On the Merits.

This suit is one in ejectment brought by one William Lewis against the appellants, who claimed by devise from Katherine Pullins. William Lewis, original plaintiff, died during the pendency of the suit, and the cause was revived in the name of the appellees, as his next of kin and heirs at law. William Lewis, original plaintiff, and Katherine Pullins, through whom defendants in this suit claim title, were brother and sister, being the surviving heirs of one Louisa Lewis (also referred to as Lizzie Lewis), who died in the year 1877. The testimony shows that Louisa (or Lizzie) Lewis was the owner of the land involved in this suit, and was in possession thereof at the time of her death. When she died, she was living with her daughter, Katherine Pullins, on this land, and after her death the said Katherine Pullins remained in possession of the land until her death in 1915. Louisa Lewis left no will, and there has been no administration on her estate. William Lewis, the original plaintiff, moved to Texas right after the war, and during all these years has had no actual possession of any of the land in controversy; but his sister, Katherine Pullins, has all the while remained in the actual, peaceable, and uninterrupted possession of said land, using it for all the purposes for which it was adapted, selling some of the timber to sawmills on three different occasions, and about 20 years ago executing a mortgage thereon.

The foregoing facts appear to be without dispute. The defendants offered in evidence what purports to be a deed executed by the said Louisa (or Lizzie) Lewis to Katherine Pullins, conveying to the latter these lands under the following description: "All the lands now owned by me in Autauga county, Alabama"—and based upon a recited consideration of the grantee having cared for the grantor during her old age, and the further agreement to continue to care for the rest of her life. The deed purported to be signed by the said Lizzie Lewis, and attested by one

Jesse Gray, with his name written as an attesting witness, and William Luther, who signed by mark only. This instrument bears date November 2, 1874, and was not recorded, and the testimony tends to show that it was found in an old trunk, presumably among the effects of Katherine Pullins, subsequent to her death.

[2] Plaintiffs offered proof tending to show that the signature of the witness Jesse Gray was not genuine. The evidence for defendants tended to show that Katherine Pullins had, since the death of her mother, remained in the peaceable and uninterrupted and adverse possession of this land, using and claiming the same as her own, and paying taxes thereon; further, that much of the land involved in this suit is not in cultivation, but is woodland. Plaintiffs offered testimony tending to show that the attesting witness, Jesse Gray, died the year before the execution of the above-noted instrument, and, if this testimony was to be credited by the jury, it would leave only the attesting witness, William Luther, whose signature is by mark only, and thus ineffectual to pass the legal title. Such an instrument, however, although invalid for the purpose of conveying the legal title, may be used as color of title, in connection with evidence of adverse possession and in view of the fact that only a portion of the land was in actual cultivation by the said Katherine Pullins, a large portion thereof being woodland, the instrument may, if considered otherwise genuine by the jury, be considered as color of title, so as to extend the possession to the entire tract.

[3] The court, at the request of plaintiffs, upon conclusion of all the evidence, gave to the jury the following written charge:

"The court charges you, gentlemen of the jury, the alleged deed, not having been recorded, cannot be considered color of title."

Failure to record the instrument is not sufficient to deprive it of its force as color of title for the purpose indicated, of showing the extent of the actual possession of the said Katherine Pullins. Fielder v. Childs, 73 Ala. 567; McInerny v. Irvin, 90 Ala. 275, 7 South. 841; Goodson v. Brothers, Adm'r, 111 Ala. 589, 20 South. 443; Perry v. Lawson, 112 Ala. 480, 20 South. 611; T. C., I. & R. R. Co. v. Linn, 123 Ala. 130, 26 South. 245, 82 Am. St. Rep. 108. Effort was made on the part of plaintiffs to impeach the genuineness of the original deed of November 2, 1874. If the deed was genuine, whether sufficiently attested or not, and Katherine Pullins remained in the possession of said land, claiming under said deed adversely to all the world, using it for all the purposes for which it was adapted, selling the timber thereon, and mortgaging the same as her own, paying the taxes thereon, all from the time of the execution of the deed in 1874 to the time of her death in 1915, and all without recognition of

any rights or interest in the land of her said brother, William Lewis, then, under the authority of Miller v. Vizzard Invest. Co., 195 Ala. 467, 70 South. 639, she would have acquired the title to the land under the doctrine of prescription and repose. Upon this theory of the case, therefore, the giving of the above charge was prejudicial, and worked injury to defendants, and calls for a reversal of the cause.

[4] The depositions of William Lewis were offered by plaintiffs, and he testified that his sister, Katherine Pullins, has been in possession of the land, holding the same for herself and himself, by and with his consent; that he had agreed she would remain and hold possession for them both. This portion of his testimony in regard to such agreement was objected to by defendants, on the ground that it does not appear when the agreement was made, or how it was made, or in what it consisted. The objection was overruled. There does not seem to have been any objection upon the general ground that the same was incompetent and illegal, or that it referred to a transaction with a deceased person whose estate is interested in the result of the suit, as contrary to our statute. Section 4007, Code 1907. It may be doubted whether or not the objections were sufficiently specific in directing attention to the illegal feature of this testimony; but, as the cause must be reversed, we may leave that matter without determination. In view, however, of another trial of the cause, we state our conclusion that, under the provisions of § 4007, Code 1907, the witness William Lewis is incompetent to testify to an agreement had with his sister, now deceased, and whose estate is interested in the result of this suit, to the effect that she would hold the land for both of them.

The question as to adverse possession, and the principles applicable thereto, will be found stated in the authorities noted in Miller v. Vizzard I. Co., supra. The judgment is reversed, and the cause remanded.

Reversed and remanded. All the Justices concur, except McCLELLAN, J., who dissents.