ADAMS, Justice.
This appeal is taken from a final judgment of the Circuit Court for Randolph County. The judgment declared that individual defendants William and Judy Hewitt (the Hewitts) are the owners of certain disputed property, under the doctrine of prescription and repose.[1]
The appellant presents to us the following issues:
1. Whether the trial court erred in concluding from the evidence that one co-tenant had ousted his co-tenants so as to be the sole owner of the real property in question.
2. Whether the trial court erred in concluding that the doctrine of repose, or common law prescription, applies in a situation involving real property, title to which is in two or more persons, in the absence of clear evidence of an ouster.
Finding no error, we affirm.
The facts of the case are as follows:
Winston C. Wood was the sole owner of 120 acres of timberland in Randolph County from 1877 until his death in 1927. He died intestate, leaving four children: C.C. Wood, A.E. Wood, Bessie Rutledge, and D.C. Wood. In 1927, after the death of the father, A.E. Wood delivered to C.C. Wood a deed, purporting to grant to C.C. Wood the entire 120 acres. In 1975, C.C. Wood con *2 veyed the property, individually, to defendant Richard T. Olsen, who, in 1980, conveyed it to the Hewitts.
C.C. Wood died in March 1980, and in January, 1981, the appellants, descendants of Bessie Rutledge and of D.C. Wood, filed an action to quiet title and sell the land for division. In their complaint the plaintiffs claimed collectively an undivided one-half of the property, and conceded that the Hewitts owned the other half. The defendants counterclaimed title to the entire property by adverse possession, prescription, statute of limitations and laches.
The court, after hearing the evidence orally without a jury, found in favor of the defendants’ counterclaim. In his order, he stated:
Attorneys for the parties have provided me with excellent statements of their positions, and I sympathize with both. On the one hand it should be and is difficult for a co-tenant to obtain good title as against the other co-tenants. However, the doctrine of repose requires that a person seek enforcement of his legal rights within twenty years.
The defendant’s predecessor in title had a recorded deed to the property for over fifty years; he exclusively assessed and paid taxes on the same in his own name for more than thirty years; he sold timber from the land; he executed a deed to the power company for a right-of-way; his neighbors considered him the owner; no joint owner questioned his claim until after he was dead. The defendants certainly had a right to rely on the appearance of things and the joint owners slept on their rights. After all the original joint owners had died, various heirs seek to establish a claim. This cannot be done because too many lips are sealed over the long lapse of time. To me, the doctrine of repose is clearly applicable in this case.
The court then went on to declare the Hew-itts sole owners of the property.
In establishing adverse possession or prescription by one co-tenant against other co-tenants, possession of one is presumed to be the possession of all, and such possession does not become adverse until the other co-tenants are actually ousted, or, short of ouster, the adverse character of the possession of one is actually known to the others, or the possession of one is so open and notorious in its hostility and exclusiveness as to put the co-tenants on notice of its adverse character. Tyson v. Jackson, 364 So.2d 1140 (Ala.1978); Foshee v. Foshee, 278 Ala. 205, 177 So.2d 99 (1965).
However,
Numerous cases hold, recognize, or affirm that if a cotenant enjoys the sole, and the undisturbed and peaceable, occupancy for a long period of time, such as for 20 years or longer, without there having been any sharing with, or demand for a sharing by, those out of possession, of the rents and profits, or of the possession or other benefits of the premises, and without there having been any acknowledgment of the cotenancy on the part of the possessor, the facts and circumstances will, in various instances, warrant a presumption or inference that an actual ouster or disseisin of the possessor’s cotenants occurred, and that an adverse possession was accordingly established against them, as of an early date (or, according to some cases, that a grant by them was made), in reasonable explanation of such possession and circumstances and in affirmance of title in the possessor, though no direct evidence of an actual ouster has been adduced.
Annot: 83 A.L.R.2d 132 (1962).
In Miller v. Vizzard Investment Co., 195 Ala. 467, 70 So. 639 (1916), this court followed the above cited rule. In that case an owner of property lived on the property with one son. At the death of the father, the son continued in sole and exclusive possession, use and enjoyment of the property until his death 32 years later. The evidence indicated that he claimed the property in his own right and took the rents and profits without accounting to or recognizing any rights in his brothers and sisters. During the 32 years there was no assertion by his co-tenants of their rights in the *3 premises. The court noted that they claimed that their brother had rheumatism, and that they had agreed among themselves that he should keep the place for his lifetime without interference by them, but that it was not claimed “that there was any agreement with or notice to him to that effect, or that the continued possession was permissive in any legal sense.” After the occupant’s death, the co-tenants filed a petition for sale for division, and the deceased brother’s daughter claimed exclusive ownership by prescriptive title in the father. This court stated:
For the purposes of this case, it might be conceded that the evidence does not convincingly show such a disseisin of the complainants by defendant’s father as would be required to set in motion the statute of limitations, although a contrary view seems to be approved in the case of Hamby v. Folsom [Folsam], 148 Ala. [221] 224, 42 South. 548. We think there can be no doubt, however, under the decisions of this court, and in line with the general current of judicial decision, that A.I. Yanzandt acquired an exclusive title to this land, as against his cotenants, under the doctrine of prescription and repose. Direct authority for this conclusion is found in the eases of Johnson v. Toulmin, 18 Ala. 50; 52 Am. Dec. 212, and Kidd v. Borum, 181 Ala. 144, 161, 61 South. 100, Ann.Cas. 1915C, 1226.
Miller, supra, 195 Ala. at 468, 469, 70 So. 639.
In Black v. Black, 233 Ala. 425, 172 So. 275 (1937), this court dealt with a fact situation with many similarities to the case before us. In that case, at the death of Robert Black, his three sisters were living on Robert’s property. Later, Wash Black, the son of one of Robert’s three brothers, moved in with Robert’s sisters. After the death of two of the sisters, the third sister executed a warranty deed purporting to convey to Wash Black the entire property, and this deed was duly recorded. For 23 years thereafter, until his death, Wash Black continued to live there, assessing and paying the taxes thereon and exercising all acts of ownership. During this period there was no assertion by any of the co-tenants of their rights in the premises. Reversing the lower court, this court held:
Based upon the theory that men do not ordinarily sleep on their rights for so long a period (Turner v. Turner, 202 Ala. 515, 81 So. 17), this court is committed to the principle that, under the circumstances above outlined, the entire title vests in such occupant under the doctrine of prescription (Miller v. Vizzard Investment Co., 195 Ala. 467, 70 So. 639; Copeland v. Martin, 201 Ala. 472, 78 So. 378; Turner v. Turner, supra; Heath v. Lewis, 200 Ala. 509, 76 So. 451; Alabama Fuel & Iron Co. v. Broadhead, 210 Ala. 545, 98 So. 789; Jones v. Rutledge, 202 Ala. 213, 80 So. 35) which, as often here reiterated, is a rule of repose (Oxford v. Estes, 229 Ala. 606, 158 So. 534).

It results, therefore, that, in our opinion, the title was perfected in Wash Black, and that his heirs alone, as named in the original bill, are entitled to share in the proceeds of the sale.
Black v. Black, 233 Ala. at 426, 427, 172 So. 275.
The primary difference between the two cases cited and the one before us is that, in the cited cases, the party deemed to have title by prescription actually lived on the disputed property, while in the case before us, the property being timberland, possession was constructive only. We see no reason, however, that the principle involved should not apply to this fact situation. The appellants rely heavily upon Tyson v. Jackson, 364 So.2d 1140 (Ala.1978), a case which involves constructive possession. That case is readily distinguishable from the one before us by the fact that, in Tyson, after the death of the original co-tenant through whom the defendants claimed title by prescription, Matthew Jackson, his brother, A.F. Jackson, the other original co-tenant, conveyed his interest to a third party. This is a clear indication that A.F. Jackson, until the time of that conveyance, *4 did not consider that he had ever relinquished his right in and to the property. On the other hand, in the case before us, there is evidence that at least one of the original two co-tenants through whom the plaintiff claimed rights in the property, Bessie Rutledge, orally communicated to C.C. Wood that she relinquished all of her claim in said property to him. While such a verbal communication cannot pass legal title, it is evident that, thereafter, C.C. Wood held the property exclusive to her, with her knowledge. While there is no direct evidence as to such an agreement between the remaining co-tenant, D.C. Wood, and C.C. Wood, there is evidence that, prior to D.C. Wood’s death in 1968, C.C. Wood granted a recorded easement in the property to Alabama Power Company in his own exclusive name, and likewise sold all the merchantable timber in his own name, holding himself out to the purchaser as the sole owner. D.C. Wood’s daughter, one of the plaintiffs, indicated at trial that, to her knowledge, her father never received any money from the sale of the timber. The lips of all the original co-tenants are now sealed in death.
Based on the above discussion, coupled with the presumptions of the ore terms rule (Silverman v. Charmac, Inc., 414 So.2d 892 [Ala.1982]; Gertz v. Allen, 376 So.2d 695 [Ala.1979]), we hold that, under the facts of this case, the findings of the trial court are not palpably wrong, without supporting evidence, or manifestly unjust. Therefore, we decline to disturb them.
AFFIRMED.
FAULKNER, ALMON and EMBRY, JJ., concur.
TORBERT, C.J., concurs specially.

. The Bank of Heflin was originally named as a defendant in the suit. As the mortgage which the Bank had held on the disputed property had been satisfied prior to the filing of the action, it was dismissed from the proceedings, but the style of the case continues to show the Bank as a party defendant.