This is an appeal from a suit based upon a complaint by John Robert Spiller seeking sale for division among tenants in common and a counterclaim by Hettie Mackereth and others seeking an accounting for Spiller's alleged "ouster" of his cotenants. By agreement of the parties, the trial Court entered a decree on the complaint ordering the sale of the property. A trial was then held ore tenus on the counterclaim.
At the conclusion of the trial, the Judge entered a finding that Spiller had ousted Mackereth and that Mackereth's attorney had performed services which inured to the benefit of the common fund resulting from the partition sale. Based on these findings, the trial Judge awarded Mackereth $2,100 rental and awarded Mackereth's attorney $3,000 of the total attorney's fee. Spiller appeals both the rental award and the attorney's fee award. We reverse as to the rental award and affirm as to the attorney's fee award.
The pertinent facts are undisputed. In February, 1973, Spiller purchased an undivided one-half interest in a lot in *Page 861 
downtown Tuscaloosa. Spiller's cotenants were Mackereth and the other appellees. At the time Spiller bought his interest, the lot was being rented by an automobile supply business called Auto-Rite. In May, 1973, Spiller offered to purchase Mackereth's interest in the property. Mackereth refused and made a counteroffer to purchase Spiller's interest which Spiller refused. Spiller then filed the complaint seeking sale for division on July 11, 1973.
In October, 1973, Auto-Rite vacated the building which it had been renting for $350 per month and Spiller begun to use the entire building as a warehouse. On November 15, 1973, Mackereth's attorney sent a letter to Spiller demanding that he either vacate one-half of the building or pay rent. Spiller did not respond to the letter, vacate the premises, or pay rent; therefore, Mackereth brought this counterclaim to collect the rental she claimed Spiller owed her.
Since there is no real dispute concerning the essential facts in this case, we will limit our review to the trial Judge's application of the law to the facts. On the question of Spiller's liability for rent, we start with the general rule that in absence of an agreement to pay rent or an ouster of a cotenant, a cotenant in possession is not liable to his cotenants for the value of his use and occupation of the property. Fundaburk v.Cody, 261 Ala. 25, 72 So.2d 710, 48 A.L.R.2d 1295 (1954); Turnerv. Johnson, 246 Ala. 114, 19 So.2d 397 (1944). Since there was no agreement to pay rent, there must be evidence which establishes an ouster before Spiller is required to pay rent to Mackereth. The difficulty in this determination lies in the definition of the word "ouster." Ouster is a conclusory word which is used loosely in cotenancy cases to describe two distinct fact situations. The two fact situations are (1) the beginning of the running of the statute of limitations for adverse possession and (2) the liability of an occupying cotenant for rent to other cotenants. Although the cases do not acknowledge a distinction between the two uses of "ouster," it is clear that the two fact situations require different elements of proof to support a conclusion of ouster.
The Alabama cases involving adverse possession require a finding that the possessing cotenant asserted complete ownership to the land to support a conclusion of ouster. The finding of assertion of ownership may be established in several ways. Some cases find an assertion of complete ownership from a composite of activities such as renting part of the land without accounting, hunting the land, cutting timber, assessing and paying taxes and generally treating the land as if it were owned in fee for the statutory period. See Howard v. Harrell, 275 Ala. 454,156 So.2d 140 (1963). Other cases find the assertion of complete ownership from more overt activities such as a sale of the property under a deed purporting to convey the entire fee. Elsheimer v. ParkerBank Trust Co., 237 Ala. 24, 185 So. 385 (1938). But whatever factual elements are present, the essence of the finding of an ouster in the adverse possession cases is a claim of absolute ownership and a denial of the cotenancy relationship by the occupying cotenant.
In the Alabama cases which adjudicate the occupying cotenant's liability for rent, a claim of absolute ownership has not been an essential element. The normal fact situation which will render an occupying cotenant liable to out of possession cotenants is one in which the occupying cotenant refuses a demand of the other cotenants to be allowed into use and enjoyment of the land, regardless of a claim of absolute ownership. Judd v. Dowdell,244 Ala. 230, 12 So.2d 858 (1943); Newbold v. Smart, 67 Ala. 326
(1880).
The instant case involves a cotenant's liability for rent. Indeed, the adverse possession rule is precluded in this *Page 862 
case by Spiller's acknowledgment of the cotenancy relationship as evidenced by filing the bill for partition. We can affirm the trial Court if the record reveals some evidence that Mackereth actually sought to occupy the building but was prevented from moving in by Spiller. To prove ouster, Mackereth's attorney relies upon the letter of November 15, 1973, as a sufficient demand and refusal to establish Spiller's liability for rent. This letter, however, did not demand equal use and enjoyment of the premises; rather, it demanded only that Spiller either vacate half of the building or pay rent. The question of whether a demand to vacate or pay rent is sufficient to establish an occupying cotenant's liability for rent has not been addressed in Alabama; however, it has been addressed by courts in other jurisdictions. In jurisdictions which adhere to the majority and Alabama rule of nonliability for mere occupancy, several cases have held that the occupying cotenant is not liable for rent notwithstanding a demand to vacate or pay rent. Grieder v. Marsh,247 S.W.2d 590 (Tex.Civ.App. 1952); Brown v. Havens,17 N.J. Super. 235, 85 A.2d 812 (1952).
There is a minority view which establishes liability for rents on a continued occupancy after a demand to vacate or pay rent. ReHolt's Estate, 14 Misc.2d 971, 177 N.Y.S.2d 192 (1958). We believe that the majority view on this question is consistent with Alabama's approach to the law of occupancy by cotenants. As one of the early Alabama cases on the subject explains:
 "Tenants in common are seized per my et per tout. Each has an equal right to occupy; and unless the one in actual possession denies to the other the right to enter, or agrees to pay rent, nothing can be claimed for such occupation." Newbold v. Smart, supra.
Thus, before an occupying cotenant can be liable for rent in Alabama, he must have denied his cotenants the right to enter. It is axiomatic that there can be no denial of the right to enter unless there is a demand or an attempt to enter. Simply requesting the occupying cotenant to vacate is not sufficient because the occupying cotenant holds title to the whole and may rightfully occupy the whole unless the other cotenants assert their possessory rights.
Besides the November 15 letter, Mackereth's only attempt to prove ouster is a showing that Spiller put locks on the building. However, there is no evidence that Spiller was attempting to do anything other than protect the merchandise he had stored in the building. Spiller testified that when Auto-Rite moved out they removed the locks from the building. Since Spiller began to store his merchandise in the building thereafter, he had to acquire new locks to secure it. There is no evidence that either Mackereth or any of the other cotenants ever requested keys to the locks or were ever prevented from entering the building because of the locks. There is no evidence that Spiller intended to exclude his cotenants by use of the locks. Again, we emphasize that as long as Spiller did not deny access to his cotenants, any activity of possession and occupancy of the building was consistent with his rights of ownership. Thus, the fact that Spiller placed locks on the building, without evidence that he intended to exclude the other cotenants, is insufficient to establish his liability to pay rent.
After reviewing all of the testimony and evidence presented at trial, we are unable to find any evidence which supports a legal conclusion of ouster. We are, therefore, compelled to reverse the trial Court's judgment awarding Mackereth $2,100 rental.
We now turn to the issue of attorney's fees. The trial Court awarded Mackereth's attorney $3,000 or 40% of the total award. Spiller's attorney complains that this award is not justified by the evidence. *Page 863 
The allowance of attorney's fees in sales for division is statutory. Title 46, 63, Code, provides:
 "In all suits and proceedings in the probate courts and circuit courts and other courts of like jurisdiction, where there is involved the administration of a trust, or where there is involved the sale of property for distribution, or where there is a partition in kind of real or personal property between tenants in common, the court having jurisdiction of such suit or proceeding may ascertain a reasonable attorney's fee, to be paid to the attorneys or solicitors representing the trust, joint, or common property, or any party in the suit or proceeding, and is authorized to tax as a part of the costs in such suit or proceeding such reasonable attorney's fee, which is to be paid when collected as the other costs in the proceeding to such attorneys or solicitors as may be directed or ordered by the court and to be a lien on the several parts in case of partition in kind."
As Spiller's attorney points out in his brief, the allowance of attorney's fees under Title 46, § 63 is on the basis of and solely for benefits inuring to the common estate and the tenants in common. Pate v. Law, 277 Ala. 608, 173 So.2d 596 (1965). The awarding of attorney's fees in partition sales is entrusted to the sound discretion of the trial Judge, and, on review, this Court will not disturb the award without a showing that the trial Judge abused that discretion. Broughton v. Nance, 244 Ala. 499,14 So.2d 505 (1943). There was evidence in the record that Mackereth's attorney placed advertisements in the Tuscaloosa News for the sale for division. It is also a matter of record that there was competitive bidding at the sale and that Spiller himself actually bought the property. Any efforts of Mackereth's attorney to encourage competitive bidding, such as placing newspaper advertisements, would have the effect of increasing the total fund inuring to the common estate. Therefore, we are of the opinion that the trial Judge did not abuse his discretion in making the award of Mackereth's attorney. We affirm the attorney's fee award.
AFFIRMED IN PART, REVERSED IN PART AND REMANDED.
HEFLIN, C.J., and MERRILL, MADDOX and SHORES, JJ., concur.